O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FLORDELIZA ESCANO, MARILA P.     )  Case No. CV 09-04778 DDP (CTx)
MAXIMO, JOEL T. CATUBLAS on      )
behalf of themselves and on      )  ORDER GRANTING IN PART AND
behalf of all others             )  DENYING IN PART PLAINTIFFS' JOINT
similarly situated,              )  MOTION FOR CLASS CERTIFICATION
                                 )
              Plaintiffs,        )  [Dkt. No. 80]
                                 )
        v.                       )
                                 )
KINDRED HEALTHCARE OPERATING     )
COMPANY, INC., a Delaware        )
corporation; KINDRED             )
HEALTHCARE INC., a Delaware      )
corporation; SPECIALTY           )
HOSPITALS OF SOUTHERN            )
CALIFORNIA, a business form      )
unknown,                         )
                                 )
              Defendants.        )
_____)


        Presently before the court is Plaintiffs Flordeliza Escano,

Marila P. Maximo, Joel T. Catublas, and Penny Burney (collectively

"Escano Plaintiffs") and Plaintiffs Debbie Fitzpatrick-Seckler and

Richard Silva (collectively "Fitzpatrick Plaintiffs")'s Joint

Motion for Class Certification.[1]  Having considered the parties'

---

[1] The two actions have not been consolidated but the court has
(continued...)

submissions and heard oral argument, the court adopts the following order.

**I. BACKGROUND**

The Escano Plaintiffs and the Fitzpatrick Plaintiffs are hourly employees at hospitals owned by Kindred Healthcare Operating Group, Inc. ("KHOI" or "Kindred"). (Ballard Depo. 16:16-19; Ballard PMQ-KHW Depo. 13:9-10.) Plaintiff Flordeliza Escano worked at Kindred Santa Ana as a licensed vocational nurse from 2004 to 2008. (Escano Depo. 31:17-19; 43:1-9.) Plaintiff Marila Maximo worked from 1997 to October 2008 at Kindred Santa Ana, first as a monitor tech and later as a licensed vocational nurse. (Maximo Depo. 57:8-10; 84:16-19; 34:15-18.) Plaintiff Penny Burney worked from June 20, 1997, to November 2007 at Kindred La Mirada as a supervisor of respiratory therapists. (Burney Depo. 40:13-15; 33:15-20; 145:2-146:19.) Plaintiff Debbie Fitzpatrick-Seckler worked from 1995 to approximately 2000 and then from 2008 to the present at Kindred Westminster as a licensed vocational nurse. (Fitzpatrick Depo. 15:23-16:4.) Plaintiff Richard Silva has worked as a respiratory therapist from 1993 to the present at Kindred Westminster. (Depo. Silva 58:12-24.) Plaintiffs filed their actions on a class basis.

The Escano and Fitzpatrick Plaintiffs collectively allege violations of wage and hour laws, specifically failure to pay appropriate overtime compensation, failure to provide meal periods, and failure to furnish accurate itemized wage statements.

**II. LEGAL STANDARD**

---

[1](...continued)
been addressing them together.

2

1      The party seeking class certification bears the burden of
2  showing that each of the four requirements of Rule 23(a) and at
3  least one of the requirements of Rule 23(b) are met.  See Hanon v.
4  Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992).  Rule 23(a)
5  sets forth four prerequisites for class certification:
6          (1) the class is so numerous that joinder of all members is
7          impracticable; (2) there are questions of law or fact
8          common to the class; (3) the claims or defenses of the
9          representative parties are typical of the claims or
10         defenses of the class; and (4) the representative parties
11         will fairly and adequately protect the interests of the
12         class.
13  Fed. R. Civ. P. 23(a); Hanon, 976 F.2d at 508.  These four
14  requirements are often referred to as numerosity, commonality,
15  typicality, and adequacy.  See Gen. Tel. Co. of Southwest v.
16  Falcon, 457 U.S. 147, 156 (1982).  "In determining the propriety of
17  a class action, the question is not whether the plaintiff has
18  stated a cause of action or will prevail on the merits, but rather
19  whether the requirements of Rule 23 are met." Eisen v. Carlisle &
20  Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation and
21  citations omitted).  This court, therefore, considers the merits of
22  the underlying claim to the extent that the merits overlap with the
23  Rule 23(a) requirements, but will not conduct a "mini-trial" or
24  determine at this stage whether Plaintiffs could actually prevail.
25  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th
26  Cir. 2011).
27  ///
28  ///

## III. DISCUSSION

### A. Joint Employer Liability

The court finds that Plaintiffs have sufficiently alleged that Kindred is a joint employer for the purposes of class certification.  In addition to owning all shares of the hospitals in question, Kindred enters into "Administrative and Support Services Agreements" with the hospitals or groups of hospitals where Plaintiffs work.  (Ballard Depo. 117:17-18; Carney Decl., Exhs. 4, 5.)  Kindred performs payroll functions (Thommen Depo. 35:19-23), distributes a uniform employee handbook to employees (Jasnoff Depo. 16:7-13; Carney Decl., Exhs. 1-3), plays a role in setting overtime policy (Thommen Depo. 65:23-66:10), maintains the Kronos timekeeping system (Wilson Depo. 25:19-29:10), provides orientation to newly hired CEOs (Tharasri Depo. 93:2-16; 94:5-8, 24-25), and screens employees prior to hiring. (Bibal Depo. 21:23-25; 22:1-10; 28:15-25; 29:1-2.)  To the extent that different hospitals under the Kindred umbrella have different policies, this will be addressed in the consideration of the 23(a) commonality requirement.

### B. AWS Overtime Class

Plaintiffs propose the following definition for their Alternative Work Schedule Overtime Class (Class 1):

> All current and former California-based hourly
> employees who work or worked for defendants pursuant
> to an alternative workweek schedule (AWS), at
> defendants' California hospitals from June 1, 2005,
> through the present who left work between the 8th

4

1    and 12th hour of their shift, and were not paid

2    daily overtime.

3         **1. Applicable Law**

4    Under California law, a "regularly scheduled alternative

5    workweek" schedule is allowed when adopted by vote of the

6    employees.  Cal. Labor Code § 511.  Under the relevant Wage Order,

7    in the health care industry an acceptable alternative workweek

8    schedule ("AWS") includes "work days exceeding ten (10) hours but

9    not more than 12 hours within a 40-hour workweek."  Cal. Code Regs.

10   tit. 8, § 11050(3)(B)(8). "If an employer . . . requires an [AWS]

11   employee to work fewer hours than those that are regularly

12   scheduled by the agreement, the employer shall pay the employee

13   overtime compensation at a rate of one and one-half (1 1/2) times

14   the employee's regular rate of pay for all hours worked in excess

15   of (8) hours . . . for the day the employee is required to work the

16   reduced hours."  Cal. Code Regs. tit. 8, § 11050(3)(B)(2).  "In

17   essence, the employer must pay a 'short-shift penalty' if AWS

18   employees are required to work fewer hours than scheduled."

19   Huntington Memorial Hosp. v. Superior Court, 131 Cal. App. 4th 893,

20   909 (2005).  The short-shift penalty is intended to give employers

21   the benefit of an AWS while protecting employees by requiring

22   regular shifts.[2]

23   _____

24        [2]"The phrase 'regularly scheduled,' as set forth in Labor Code
     § 511(a), means that the employer must schedule the actual work
25   days and the starting and ending time of the shift in advance,
     providing the employees with reasonable notice of any changes,
26   wherein said changes, if occasional, shall not result in a loss of
     the overtime exemption.  However, in no event does Labor Code §
27   511(a) authorize an employer to create a system of 'on-call'
     employment in which the days and hours of work are subject to
28   continual changes, depriving employees of a predictable work

                                              (continued...)

### 2. Plaintiffs' Allegations

Plaintiffs allege that AWS employees are frequently required to leave after working eight hours but before completing their full twelve-hour shift.  They assert that Defendants have a practice of "flexing off" employees when there is a low patient census and not compensating them at the overtime rate for any hours they worked over eight on days when they were flexed off.  The class they propose comprises all AWS employees who worked more than eight but fewer than twelve hours and did not receive overtime compensation for the hours in excess of eight.

### 3. Standing

Defendants argue that this Class is overbroad because it includes employees who voluntarily cut their shifts short as well as employees who were required to leave early. (Response to Plaintiff's Revised Class Definitions ("Resp. to Rev'd Class Defs.") 1.)  Under the relevant Wage Order, an employer must pay overtime only if an AWS employee is required to work fewer hours than her full shift.  Cal. Code Regs. tit.8, § 11050(3)(B)(2). Defendants argue that because the Class includes employees who left voluntarily after eight hours, the class includes members without standing and is therefore unascertainable.  See Sanders v. Apple, Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)("No class may be certified that contains members lacking Article III standing. . . . The class must therefore be defined in such a way that anyone within it would have standing.")

---

[2](...continued)
schedule."  (California Department of Industrial Relations, Industrial Welfare Commission, Statement as to the Basis, http://www.dir.ca.gov/iwc/statementbasis.htm.)

The court agrees that the proposed class definition is overbroad, but finds that it can be remedied by restricting the Class to those employees who were required to leave work between the 8th and 12th hour.  Henceforward the court will use the following definition for Class 1:

> All current and former California-based hourly
> employees who work or worked for Defendants pursuant
> to an alternative workweek schedule (AWS), at
> Defendants' California hospitals from June 1, 2005,
> through the present who were <u>required to leave</u> work
> between the eighth and twelfth hour of their shift,
> and were not paid daily overtime.

(Emphasis added to indicate court's modification.)

### 4. Predominance (23(b))

Because Defendants' primary objections to this Class pertain most directly to predominance, the court will address Rule 23(b) before turning to the 23(a) analysis.

Under Rule 23(b)(3), a plaintiff seeking to certify a class must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendants argue that this Class does not meet the predominance requirement because there is a question in each instance as to whether an employee chose to leave early or was required to do so.  This, they assert, is the dispositive issue, since employees who leave voluntarily after eight hours are not entitled to compensation.  According to Defendants, Plaintiffs have

not proposed a manageable method of answering the individual question of whether in each instance an employee was "required" to leave early.

Plaintiffs present evidence that tends to show that Defendants had a policy of not paying overtime to AWS employees working more than eight hours but less than a full AWS shift.  None of the deponents indicated an awareness of the legal requirement to do so.  Payroll coordinators and officers indicated that they were not aware of the law regarding short-shift penalties.  Nancy Wilson, Chief Financial Officer at Kindred La Mirada, testified that the only time AWS employees are entitled to overtime is when they work over 12 hours in a day or 40 hours in a week.  (Wilson Depo. 109:1-9.)  She had never heard of a "short shift premium."  (Wilson Depo. 121:2-3.)  Defendants apparently did not record whether an AWS employee had left voluntarily or was required to leave and that no overtime was paid as a rule in such situations.  (Davies Depo. 30:18-31-8.)

Plaintiffs also present evidence that there is no code in the Kronos time keeping system that a payroll officer could use to indicate that an employee was entitled to a short-shift penalty.  Renay Thommen, Senior Director of Payroll at KHOI, testified that there was no code to indicate whether an employee had voluntarily left under those circumstances or if she had been required to leave.  (Thommen Depo. 210:23-211:5.)

Plaintiffs also present evidence that employees were not informed that they are entitled to a short-shift premium if they are required to leave before the end of their AWS shift.  While the employment agreement states that AWS employees working more than 40

1   hours in a week or 12 hours in a day will receive overtime for

2   excess hours, it makes no mention of the short-shift penalty. (See

3   Exhs. 34, 40, 46.) Because the employment policies deal with other

4   details pertaining to AWS overtime, the failure to address short

5   shift penalties tends to indicate a policy of not paying such

6   premiums.[3]

7       Defendants argue that even if Kindred Human Resources is not

8   equipped to handle the short shift penalty, individualized

9   questions predominate because in each instance of a short shift,

10  the court would have to determine whether an employee was required

11  to leave or left voluntarily.  In support of this, Defendants point

12  to depositions from the named Plaintiffs that are in tension with

13  Plaintiffs' claim that AWS employees were required to leave early.

14  Defendants point to Burney's statement that she was never required

15  to leave a shift early nor did she require the employees she

16  supervised to leave early.  (Burney Depo. 62:15-24.)  They point to

17  Escano's testimony that some days ("few and far between") she left

18  early to pick her son up from school, although she does not have a

19  record of those days.  (Escano Depo. 142:22-144:1.)  Based on this

20  mixed testimony, Defendants argue that there is neither substantial

21

22      _____

        [3]Defendants cite Gonazlez v. Millard Mall Servs, Inc., 281

23  F.R.D. 455, 464 (S.D. Cal. 2012), in support of the proposition
    that the lack of a policy does not establish a violation or

24  constitute evidence that common issues predominate. The two cases
    are distinguishable.  In Millard Mall, there was an express policy

25  against spilt shifts, as stated in the union agreement.  The
    employer's lack of a policy regarding split shifts could not be

26  taken as evidence of a violation because split shifts were not
    permitted by the CBA.  Here, in contrast, there is no mention of a

27  short-shift penalty for AWS employees in their employment
    agreements, and no other indication of a stated policy of paying

28  the short-shift penalty, but there is also no stated prohibition on
    short-shifts.

evidence of requiring employees to leave nor a class-wide means of
answering this question.

     The California Supreme Court addressed a similar issue in the
context of misclassification of employees in <u>Sav-On Drugstores,</u>
<u>Inc. v. Superior Court of Los Angeles County</u>, 34 Cal. 4th 319
(2004).  The defendants in that case argued that "whether any
individual member of the class is exempt or nonexempt from the
overtime requirements depends on which tasks that person actually
performed and the amount of time he or she actually spent on which
tasks" and that therefore "no meaningful generalizations about the
employment circumstances of its managers could be made."  <u>Id.</u> at
325.  That court found that "[t]he record contains substantial, if
disputed, evidence that deliberate misclassification was
defendant's policy and practice."  <u>Id.</u> at 329.  Based on such
evidence, the court concluded that "to the extent plaintiffs are
able to demonstrate . . . that misclassification was the rule
rather than the exception, a class action would be the most
efficient means of resolving class members' overtime claims."  <u>Id.</u>
at 330. "Even if some individualized proof of such facts ultimately
is required to parse class members' claims, that such will
predominate in the action does not necessarily follow." <u>Id.</u> at 334.

     The issue here is whether determining that an employee was
required to leave depends on individual or class-wide evidence.
Plaintiffs appear to argue that they can present objective evidence
that Kindred has a policy of requiring employees to leave when the
patient census is low, what they refer to as the employees being
"flexed off."  The theory is that the supervisor looks at the
patient census, determines the number of employees required by

statute, and then determines how many employees, if any, will be required to leave.  At that point, the supervisor may ask the employees who among them wishes to leave.  Theoretically, that question should result in an employee either leaving voluntarily or being required to leave.  If she leaves voluntarily, she should be paid at her usual hourly rate for the hours worked beyond eight. If she is required to leave, she should be compensated at the overtime rate (time-and-a-half) for the hours she worked over eight but under twelve.

Here, however, it appears that neither employees nor human resources staff know that employees who are required to leave are entitled to a short-shift penalty.  In the absence of this information, even if the supervisor asks for volunteers, the choice to leave is not truly voluntary since employees are not aware that they would be entitled to overtime pay if they were required to leave, but not if they volunteer.  With this knowledge of their rights, employees might, for instance, collectively agree not to volunteer, such that the employer would have to require employees to leave and pay the short-shift penalty if they wished to reduce the staffing roster at a given time.

In the absence of such knowledge of rights, an employee's decision to "volunteer" to take a short shift cannot be considered voluntary.  Plaintiffs are likely to be able to use class-wide proof in the form of time and patient census records to show that requiring employees to leave based on low patient census was "the rule rather than the exception." Sav-On, 34 Cal. 4th at 330.  Some individualized questions may remain, as evidenced in certain depositions where Plaintiffs testified to their occasional need to

leave early for specific reasons.  Such questions do not preclude class treatment.  "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed."  _Id._ at 334.

"[I]f unanticipated or unmanageable individual issues do arise, the trial court retains the option of decertification."  _Id._ at 335. Decertification of this class would be appropriate if, for instance, Plaintiffs were not able to use time and patient census records to demonstrate a policy of "flexing off," or if Plaintiffs could demonstrate such a policy only at some of the Kindred hospitals.

The court therefore finds that this Class meets the Rule 23(b) predominance requirement.

### 5. Rule 23(a) Requirements

Defendants contend that this Class does not meet the requirement of commonality.  Commonality for purposes of Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of the law . . . . Their claims must depend upon a common contention."  _Wal-Mart Stores, Inc. v. Dukes_, 131 S.Ct. 2541, 2551 (internal quotation marks and citation omitted).  Defendants make an argument similar to their argument with respect to predominance, namely that Plaintiffs fail to present evidence of a uniform policy or practice and that statistical evidence from time records cannot explain why an employee left early.  As discussed above, the court finds that Plaintiffs have presented sufficient evidence of a policy of not compensating Plaintiffs for short shifts, which is equally evidence

of Plaintiffs' common injury.  The court thus finds that there is commonality.

Defendants do not dispute that this Class meets the requirements of numerosity, typicality, and adequacy.  The court finds that these requirements are satisfied and the AWS Class is suitable for certification.

**C. Regular Rate Class**

Plaintiffs propose the following definition for their Regular Rate Class (Class 2):

> All California based hourly employees who work or
> worked for Defendants' hospitals at any time between
> June 1, 2005, and the present who were paid a double
> time premium and/or paid for at least one missed
> meal period payment. (These payments are made by
> defendant at the base rate and not the legally
> required regular rate.)

**1. Applicable Law**

Under California law, work in excess of 12 hours per day is compensated at double the employee's "regular rate of pay."  Cal. Labor Code § 510. California also requires that when an employer fails to provide an employee a mandated meal or rest period, the employee is entitled to one additional hour of pay at the employee's "regular rate of compensation."  Cal. Labor Code § 226.7.  California law uses the definition of "regular rate" from the Fair Labor Standards Act.  See Advanced-Tech Sec. Servs., Inc. v. Superior Court, 77 Cal. Rptr. 3d 757, 762-63 (2008).  Under the FLSA, the "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," with some exceptions.  29

13

U.S.C. § 207.  Plaintiffs assert that their regular rate includes
shift differentials and education and bonus compensations, as
mandated by 29 C.F.R. 778.110, and 778.200, 778.208.

### 2. Plaintiffs' Allegations

Plaintiffs present evidence that the double time premium and
missed meal period payments are paid at the base rate, not the
regular rate.  Plaintiffs offer a declaration from economist and
statistician Dwight Steward who determined that "employees were
compensated for their double time hours and their missed meal
penalty payments at the employees' standard hourly rate," not at
the regular rate.  (RJN Exh. 12; Decl. Steward ¶¶ 3-5.)  Kindred
Human Resources employees likewise indicated in their depositions
that double time and missed meal period penalties are paid at the
base rate, not the regular rate.  (Thommen Dep. 223:10-13, 224: 22-
25.)  Indeed, Kindred's missed meal period policy states that when
a meal penalty is paid, "the additional hour will be paid at base
rate of pay . . . ." (Carney Decl., Exh. 31, "Missed Meal –
California.")

### 3. Rule 23(a) and (b) Requirements

Defendants do not assert, nor does the court find, that this
class fails to meet any of the Rule 23(a) or (b) requirements.
Their sole critique is that the class includes employees who do not
receive any of the bonuses or other benefits that enter into the
calculation of the regular rate and thus whose compensation for
missed meal periods and double time at the base rate was proper.

The court finds that the class can be limited so as to narrow
the class to those employees with standing.  Henceforth Class Two
shall be defined as follows:

14

1      All California-based hourly employees who work or

2      worked for Defendants' hospitals at any time between

3      June 1, 2005, and the present who were paid a double

4      time premium and/or paid for at least one missed

5      meal period payment <u>at the base rate instead of the</u>

6      <u>regular rate to which they were entitled</u>.

7  So limited, the Class is appropriate for certification.

8      **D. Waiting Time Class**

9      Plaintiffs propose the following definition for their Waiting

10  Time Class (Class 4):

11      All current and former California-based hospital

12      employees employed as hourly, non-exempt employees

13      by Defendants who work or worked for Defendants from

14      June 1, 2006, through the present who left

15      Defendants' employ during this period and are a

16      member of either Class 1, 2, Class 5, Subclasses 5,

17      5B, 5C, this is a derivative claim only.

18      Under California law, if an employer willfully fails to pay

19  the wages of an employee who is discharged, the wages shall

20  continue as a penalty until paid but for not more than 30 days.

21  Cal. Labor Code § 203.  This Class is derivative of the other

22  classes.  The court certifies it to the same extent that it

23  certifies the other classes.

24      **E. Meal Period Classes**

25         **1. Failure to Provide All Meal Periods**

26      Plaintiffs propose the following definition for their Failure

27  to Provide Meal Periods Class (Class 5):

28

1    All current and former California-based hourly

2    hospital employees employed by Defendants from June

3    1, 2005, to the present, who were not provided

4    legally compliant meal periods within the first 5

5    hours of their shift.

6              **a. Applicable Law**

7    California law requires that employers "provide a first meal

8    period after no more than five hours of work . . . ." Brinker

9    Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1049 (2012). In

10   Brinker, the California Supreme Court held that "an employer must

11   relieve the employee of all duty for the designated period, but

12   need not ensure that the employee does no work." Id. at 1034.  The

13   meal period requirement is only "satisfied if the employee (1) has

14   at least 30 minutes uninterrupted, (2) is free to leave the

15   premises, and (3) is relieved of all duty for the entire period."

16   Id. at 1036.

17            **b. Plaintiffs' Allegations**

18   Plaintiffs allege that Kindred has a policy of failing to

19   provide meal breaks within the first five hours. As evidence of

20   this policy, they present Defendants' meal period policy documents

21   which do not state that meals are to be taken in the first five

22   hours of the shift.  Those policies state that "[e]mployees will be

23   provided a one-half hour unpaid meal break in accordance with state

24   law. . . . If you are a non-exempt employee, you must clock out

25   unless your facility allows for an automatic meal deduction."

26   (Carney Decl., Exh. 2.)  They also present deposition testimony

27   from Laurie Yamamori, Payroll Benefits Coordinator at Kindred

28   Hospital Baldwin Park, stating that she does not review time cards

to determine whether the meal break was taken at a certain time of the day.  (Yamamori Depo. 55:22-25.)  Additionally, Plaintiffs reviewed time cards (Decl. Carney, Exhs. 12, 13, and 14) and determined that Maximo had 13 late meal periods, Burney had 134 late meal periods, and Escano had 28 late meal periods.  (Carney Decl. RE: Reply ¶ 5.)  Finally, Plaintiffs assert that when they correlate employee time records with patient census records, they will show whether Plaintiffs' late lunches coincide with times when the hospital had insufficient staff coverage to relieve employees of all duties for a meal period while maintaining the mandated patient-to-staff ratio.

### c. Predominance

This court has previously indicated its agreement with Justices Wedegar and Liu that if a meal period is not taken by the employee, the burden falls on the employer to rebut the presumption that meal periods were not adequately provided.  See Brinker, 53 Cal. 4th at 1053 (Werdegar, J., concurring)("If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided."). "Otherwise, employers would have an incentive to ignore their recording duty, leaving employees the difficult task of proving that the employer either failed to advise them of their meal period rights, or unlawfully pressured them to waive those rights." Ricaldai v. U.S. Investigations Servs., LLC, 878 F. Supp. 2d 1038, 1044 (C.D. Cal. 2012).

Here, the records offered by Plaintiffs show that a meal period was sometimes not provided to named Plaintiffs within the

17

five hours.  Under this court's holdings, for an individual
plaintiff the burden would fall on the employer to rebut the
presumption of inadequate meal periods.  The issue here is where
the burden lies for the purposes of class certification.  This
court addressed a similar issue with respect to the
misclassifcation of employees in <u>Marlo v. United Parcel Serv.,</u>
<u>Inc.</u>,  251 F.R.D. 476 (C.D. Cal. 2008).  This court held:

> As to any individual, UPS would have the burden of
> proving the exemption was proper.  However, as to a
> class-wide finding of misclassification which is the
> result Plaintiff seeks here, Plaintiff would have
> the ultimate burden of showing misclassification on
> a class-wide basis.  This does not mean to succeed
> at trial, or to otherwise maintain a class action,
> that Plaintiff is required to show that all or
> substantially all FTS were misclassified.  Rather,
> Plaintiff must show that it is more likely than not
> that UPS's exemption as applied to FTS was a policy
> or practice of misclassification.  In any event, a
> plaintiff must provide common evidence of
> misclassification to maintain class certification
> and proceed with a class action trial.

<u>Id.</u> at 482-83.

The issue here is similar.  Although the burden falls on
Kindred to rebut the presumption of inadequate meal periods for an
individual employee, Plaintiffs have the ultimate burden to prove
that Defendants have a policy of inadequate meal provision.
Plaintiffs must provide common evidence of inadequate meal periods

1  to satisfy the 23(b) predominance requirement and obtain class
2  certification.

3       To satisfy the 23(b) predominance requirement, "it is not
4  enough simply that common questions of law or fact exist;
5  predominance is a comparative concept that calls for measuring the
6  relative balance of common issues to individual ones." Marlo, 251
7  F.R.D. at 483. "The need for common proof recognizes that a
8  plaintiff's evidence should have some common application to class
9  members in order to provide a basis for the jury to find that [the
10 policy] 'was the rule rather than the exception.'" Id. at 484
11 (quoting Sav-On, 34 Cal. 4th at 330).  The predominance requirement
12 is not met "when a plaintiff brings a claim on a class-wide basis
13 that raises individualized issues, but fails to provide common
14 proof that would have allowed a jury to determine those issues on a
15 class-wide basis." Marlo, 251 F.R.D. at 485.

16      Plaintiffs' proposed proof of correlating missed meals with
17 patient census records may be common proof that would allow the
18 issue of missed meal periods to be determined on a class-wide
19 basis.  However, Plaintiffs have not provided any such proof or
20 attempted, so far as the court knows, to obtain patient census
21 records and perform a sample of the necessary analysis.  Such
22 analysis could conceivably demonstrate that it was more likely than
23 not that in a given instance of a missed meal, Plaintiff was not
24 provided with that meal because of Defendants' policy.  However,
25 Plaintiffs have not provided such evidence.

26      The only common evidence before the court is evidence that the
27 meal policy does not specifically mention a review for a meal
28 within the first five hours and that the named Plaintiffs did miss

some (but not all) meals.  In contrast, Defendants have emphasized evidence of disparate processes that different hospital facilities and departments had of handling meal period scheduling and coverage.  Some facilities had written meal schedules posted by supervisors, while others sometimes had such schedules, and still others never had them. (See, e.g., Escano Depo. 124:4-125:4; Burney Depo. Vol. I, 55:8-56:3, 61:1-9, 62: 19-22, 65:6-66:15; and Silva Depo. 92:20-94:12.) Facilities and departments also differed in how coverage was provided for employees during meal periods.  Maximo testified that if she wanted to take a break but was with a patient, she had to wait until somebody could cover for her. (Maximo Depo. 90:5-12.)  Silva testified that respiratory therapists were instructed to give their pager to another therapist when ready to take a meal break.  (Silva Depo. 97:4-98:4.)  Burney testified that as a supervisor, she would cover for employees who wanted to take their break or help find them coverage.  (Burney Depo. Vol. 1, 88:19-91:20.)

These differences would not necessarily overcome common evidence of a Kindred-wide policy to delay meal periods for purposes of staff coverage, but the evidence that Plaintiffs have in fact put forward is insufficient to meet their burden of establishing predominance.

Plaintiffs do not argue, nor does the court find, that they meet any of the other 23(b) requirements.  This class is therefore not appropriate for certification.

### 2. Meal Waiver Subclass

Plaintiffs propose the following definition for their Meal Waiver Class (Class 5B):

1       All current and former California-based hourly

2       hospital employees regularly scheduled to work 12

3       hour shifts who worked for Defendants from June 1,

4       2005, to the date of judgment who signed a meal

5       waiver as a condition of employment when hired by

6       Defendants.

7             **a. Predominance (23(b))**

8       Under California law, AWS employees may waive their right to

9   one of two meal periods.[4]  Plaintiffs present evidence that all or

10  nearly all AWS employees do sign the second meal waiver.  The

11  Kindred Missed Meal Policy, produced in both <u>Fitzpatrick</u> and

12  <u>Escano</u>, states: "Employees are entitled to a second meal after 12

13  hours.  Most 12-hour employees who have signed a 12-hour agreement,

14  also have an agreement to waive their right to the second meal.

15  The Missed Meal penalty is not automated for a 2nd meal in a

16  shift."  (Carney Decl., Exh. 31.)  Annette Bibal, Human Resources

17

18      [4]"Notwithstanding any other provision of this order, employees
in the health care industry who work shifts in excess of eight (8)

19  total hours in a workday may voluntarily waive their right to one
of their two meal periods. In order to be valid, any such waiver

20  must be documented in a written agreement that is voluntarily
signed by both the employee and the employer. The employee may

21  revoke the waiver at any time by providing the employer at least
one (1) day's written notice. The employee shall be fully

22  compensated for all working time, including any on-the-job meal
period, while such a waiver is in effect." Cal. Code Regs., tit. 8,

23  § 11050.
        "[H]ealth care representatives persuaded the IWC to at least

24  preserve expanded waiver rights for their industry, along the lines
of those originally afforded in 1993. (See IWC statement as to the

25  basis (Jan. 1, 2001) pp. 19-20.) Accordingly, wage order No. 4-2001
and No. 5-2001 each contains a provision absent from other wage

26  orders, permitting health care employees to waive one of two meal
periods on longer shifts. (IWC wage order No. 4-2001 (Jan. 1, 2001)

27  (Cal.Code Regs., tit. 8, § 11040, subd. 11(D)); Wage Order No. 5,
subd. 11(D).)" <u>Brinker Rest. Corp. v. Superior Court</u>, 53 Cal. 4th

28  1004, 1047 (2012).

Director at Kindred Hospital Baldwin Park, testified that no AWS
employees who were hired since she was at Kindred have not signed
the meal waiver.  (Bibal Depo. 31:13-32:24.) Kristen Davies
testified that because "our employees sign a meal waiver for their
second meal" and that "[t]hey sign it when they're hired."  (Davies
Depo. 16:12-17:1.)

More explicitly, the declarations of Maximo, Escano, and
Burney state that Plaintiffs must sign the waiver as a condition of
employment.  (Maximo Decl., Exh 1 ¶ 4 ("As an LVN at Kindred, I was
required to waive one of my two meal periods as a condition of
employment.  I recall being asked to sign the waiver and felt that
there was no option but to sign it."); Escano Decl. ¶ 5 (same);
Burney Decl. ¶ 5 (same).)  Defendants assert that this contradicts
their deposition testimony. (See, e.g., Escano Depo. 76:24-77:6
(saying she did not recall anybody ever telling her that she had to
sign the waiver); Maximo Depo. 70:6-17 (saying that nobody told
her she had to sign the waiver even if she didn't want to); Seckler
Depo. 55:25-56:9, (saying that at the orientation, they explained
that "I could have taken a second 30-minute break, but I put on
here that I waived it.  But they didn't get in-depth.").)

The court finds that the apparently universal signing of the
second meal waiver lends itself to the inference that signing the
waiver is a condition of employment and gives rise to a class
question.[5]  Although the deposition testimony indicates that there

---

[5]Defendants cite Washington v. Joe's Crab Shack, 271 F.R.D.
629, 641 (N.D. Cal. 2010), for the proposition that whether an
employee signed a meal period waiver voluntarily is inherently an
individualized issue.  That case is distinguishable from the
current case, however, because there some employees signed a waiver
(continued...)

1  may not have been an overt requirement of signing the meal waiver,

2  the pressure may have been implicit but nonetheless strong enough

3  for Plaintiffs to believe that if they did not sign the meal

4  waiver, they would not be hired.  Plaintiffs have therefore met

5  their burden of demonstrating predominance under 23(b).

6                    **b. Rule 23(a) Requirements**

7         Defendants do not challenge the numerosity, typicality, or

8  adequacy of this class.  They do argue that this class does not

9  meet the Rule 23(a) commonality requirement because whether an

10  employee signed a meal waiver voluntarily is an inherently

11  individualized issue.  As articulated above, the court finds that

12  there is sufficient evidence of a common question of fact, namely,

13  whether employees were required to waive their second meal period

14  as a condition of employment.

15        This class is appropriate for certification.

16                    **3. Third Meal Subclass**

17        Plaintiffs propose the following definition for their Third

18  Meal Subclass (Class 5C):

19        All current and former California-based hospital

20        hourly employees who worked for Defendants June 1,

21        2005, to the date of judgment and worked over a

22        twelve (12) hours in a shift without being provided

23        an additional meal period or requisite payment for

24        said meal.

25

26

27        [5](...continued)

28  and some did not.  Here, all employees signed a waiver, making the
    issue of the waiver a common question of fact.

_Brinker_ explained that the second meal period does not have to be five hours after the first, but instead "after no more than 10 hours of work." _Brinker_, 53 Cal. 4th at 1042. "[W]e conclude the IWC abandoned any requirement that work intervals be limited to five hours following the first meal break." _Id._ at 1046. "Under the wage order, as under the statute, an employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work." _Id._ at 1049. By _Brinker_'s logic that there are no additional timing requirements, it appears that the third meal would be due after no more than 15 hours of work.

The court is aware that given the universal waiver of the second meal, AWS employees working overtime could go ten hours without a meal break. However, the court cannot see any statutory or other authority to require meal periods under these circumstances. The current law is clear that meal waivers on shifts in excess of 12 hours are permitted.[6]

Because there is no requirement to provide a third meal period until the end of hour 15, Plaintiffs have not established a common legal question for this subclass. It is therefore not certified.

---

[6]"Notably, the waiver provisions permit meal waivers even on shifts in excess of 12 hours and thus conflict with language in the standard subdivision regulating second meal periods in other wage orders that limits second meal waivers to shifts of 12 hours or less (see, e.g., IWC wage order No. 2-2001 (Jan. 1, 2001) ( Cal.Code Regs., tit. 8, § 11020, subd. 11(B))). For this reason, the IWC elected to omit that standard subdivision from these two wage orders. (See IWC statement as to the basis (Jan. 1, 2001) pp. 19-20.) Because the omission related to waiver and was not the product of any intent to include different meal timing requirements in Wage Order No. 5, we interpret that order as imposing the same timing requirements as those in most of the IWC's other wage orders and in Labor Code section 512." _Brinker_, 53 Cal. 4th at 1047-48.

**F. Wage Statement Class**

Plaintiffs propose the following definition for their Wage Statement Class (Class 6):

> All current and former California-based hourly
> hospital employees who worked for Defendants June 1,
> 2008, to the date of judgment who were not provided
> pay stubs that complied with California Labor Code §
> 226, which failed to include: total hours worked,
> all applicable hourly rates, and the gross wages.

**1. Applicable Law**

California law places a number of requirements on employee pay stubs.  Section 226(a) of the Labor Code states those requirements, which include, among other things, a statement of gross wages, total hours, and deductions. Cal. Labor Code § 226(a).  Under the same provision, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [§ 226(a)] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Id. § 226(e).

The parties, and courts, disagree on the nature of the injury requirement.  Kindred asserts that a paycheck deficiency under § 226(a) is not per se an injury making the employee eligible for compensation; it argues that the issue is whether the pay stub provides sufficient information to enable an employee to confirm

whether she is properly paid.  See, e.g., Morgan v. United Retail, Inc., 186 Cal. App. 4th 1136 (2010).

Plaintiffs cite cases holding that the injury requirement is minimal.  Jaimez v. DAIOHS USA, Inc., 181 Cal. App. 4th 1286, 1306 (2010)("While there must be some injury in order to recover damages, a very modest showing will suffice.")  Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361, 374 (C.D. Cal. 2009)  (quoting Elliot v. Serion Pacific Work, LLC, 572 F. Supp. 2d 1169, 1181 (C.D. Cal.2008))("[T]he types of injuries on which a Section 226 claim may be premised include 'the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.'")  Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d 1042, 1050-51 (C.D. Cal. 2006) ("Additionally, this lawsuit, and the difficulty and expense Plaintiffs have encountered in attempting to reconstruct time and pay records, is further evidence of the injury suffered as a result of CDN's wage statements. Plaintiffs' ability to calculate unpaid and miscalculated overtime is complicated by the missing information required by Section 226(a). The purpose of the requirement is that employees need not engage in the discovery and mathematical computations to analyze the very information that California law requires.")  This court agrees that the injury requirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute; if the injury requirement were more than minimal, it would nullify the impact of the requirements of the statute.

1   The court is reinforced in this interpretation of the injury
2   requirement by the recent statutory amendment to Section 226
3   clarifying the injury requirement by providing a statutory
4   definition. Section 226(e) now states that "[a]n employee is deemed
5   to suffer injury . . . if the employer fails to provide accurate
6   and complete information as required by one or more of [the section
7   (a) requirements] and if the employee cannot promptly and easily
8   determine from the wage statement alone . . . (i) The amount of
9   gross wages or net wages . . . (ii) Which deductions the employer
10  made from gross wages to determine the net wages . . ." Cal. Labor
11  Code § 226(e).  The Senate Bill Analysis indicates that because of
12  the "contradictory and inconsistent interpretations of what
13  constitutes 'suffering injury' . . . in the various court cases . .
14  . it is necessary to provide further clarity on the issue . . ."
15  SB 1255 Bill Analysis,
16  http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_1251-1300/sb_1255_c
17  fa_20120828_175021_sen_floor.html.  Although this statutory
18  modification is not dispositive of the issue, the court finds it
19  persuasive.

20              **2. Plaintiffs' Allegations**

21      All Kindred pay stubs have the same format, regardless of the
22  hospital. (Thommen Depo. 228:1-3.)  Until June 2010, the pay stubs
23  did not contain the total number of hours worked and do not include
24  the various rates of pay. (Thommen Depo. 228:1-234:15; Thommen
25  (PMQ) 16:12-17:9; Carney Decl., Exhs. 8-10; 17-18; 27; RJN Exh. 12,
26  Steward Decl. ¶ 4.)

27              **3. Rule 23(a) and (b) Requirements**

28

1    The court finds that the minimal injury requirement has been
2    met by Plaintiffs' inability to determine whether they have been
3    paid appropriately, and finds that this class is appropriate for
4    certification, with one modification.  Because the Kindred pay
5    stubs were modified in June 2010 to include the missing 226(e)
6    items, the Class should be limited to claims prior to that date,
7    with the exception of claims that Defendant failed to include the
8    appropriate pay rate (i.e. regular rate).  The latter claims are
9    ongoing.

10   The Class definition is therefore revised as follows:

11       All current and former California-based hourly

12       hospital employees who worked for Defendants <u>at the</u>

13       <u>base rate only from June 1, 2008, to June 1, 2010,</u>

14       <u>or who worked for Defendants at the base and regular</u>

15       <u>rate from June 1, 2008, to the date of judgment,</u> who

16       were not provided pay stubs that complied with

17       California Labor Code § 226, which failed to

18       include: total hours worked, all applicable hourly

19       rates, and the gross wages.

20   (Emphasis added to indicate the court's modifications.)

21   **IV. CONCLUSION**

22       For these reasons, the Court certifies Classes 1, 2, 4, 5B,
23   and 6, and does not certify Classes 5 or 5C.  The certified Classes
24   are defined as follows:

25       1. All current and former California-based hourly employees
     who work or worked for Defendants pursuant to an alternative
26   workweek schedule (AWS), at Defendants' California hospitals
     from June 1, 2005, through the present who were required to
27   leave work between the eighth and twelfth hour of their shift,
     and were not paid daily overtime.

28

2. All California-based hourly employees who work or worked for Defendants' hospitals at any time between June 1, 2005, and the present who were paid a double time premium and/or paid for at least one missed meal period payment at the base rate instead of the regular rate to which they were entitled.

3. All current and former California-based hospital employees employed as hourly, non-exempt employees by Defendants who work or worked for Defendants from June 1, 2006, through the present who left Defendants' employ during this period and are a member of another certified Class.

4. All current and former California-based hourly hospital employees regularly scheduled to work 12 hour shifts who worked for Defendants from June 1, 2005, to the date of judgment who signed a meal waiver as a condition of employment when hired by Defendants.

5. All current and former California-based hourly hospital employees who worked for Defendants at the base rate only from June 1, 2008, to June 1, 2010, or who worked for Defendants at the base and regular rate from June 1, 2008, to the date of judgment, who were not provided pay stubs that complied with California Labor Code § 226, which failed to include: total hours worked, all applicable hourly rates, and gross wages.

IT IS SO ORDERED.


Dated: March 5, 2013

_DEAN D. PREGERSON_
DEAN D. PREGERSON
United States District Judge

29